# 14-2405-cv

# United States Court of Appeals
## for the
## Second Circuit

—⬤—

MOREFUN CO., LTD.,

*Plaintiff-Appellant,*

– v. –

MARIO BADESCU SKIN CARE INC.,

*Defendant-Appellee.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

SHEPPARD, MULLIN, RICHTER
& HAMPTON LLP
*Attorneys for Plaintiff-Appellant*
30 Rockefeller Plaza, 39th Floor
New York, New York 10112
(212) 653-8700

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, counsel for Plaintiff-Appellant Morefun Co. Ltd. certifies that ISE Commerce, a company that is publicly traded in the Republic of Korea, owns fifty-one percent (51%) of Morefun Co. Ltd.'s stock.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................... 1

JURISDICTIONAL STATEMENT ............................................ 1

STATEMENT OF ISSUES PRESENTED.................................. 2

STATEMENT OF THE CASE.................................................... 3

  A.  Procedural History ......................................................... 3

  B.  Plaintiff Enters Into A Distributorship Agreement
      With Defendant...................................................... 4

  C.  After Plaintiff Purchases Seven Batches Of Products Under
      The Distributorship Agreement, The Korean Food And Drug
      Administration Orders A Recall Of Batch 372 (Only)...................... 4

  D.  Plaintiff Suffers $900,000 In Damages And Is Fraudulently Induced
      To Enter Into A Settlement Agreement Concerning Those Damages
      That It Suffered From The Recall Of Batch 372............................ 5

  E.  Defendant's Fraud Is Revealed When The KFDA Recalls
      Each Batch Of The Products .............................................. 7

  F.  The District Court Decision................................................ 10

SUMMARY OF ARGUMENT .................................................. 11

STANDARD OF REVIEW ....................................................... 16

ARGUMENT ........................................................................ 17

POINT I

    THE DISTRICT COURT'S HOLDING THAT PLAINTIFF'S
    CLAIMS ARE BARRED BY THE SETTLEMENT AGREEMENT
    IS INCORRECT ........................................................... 17

A.   Plaintiff's Detailed Allegations That The Release Was Procured By Defendants' Fraud Warranted The Denial Of The Motion To Dismiss ........................................................................ 17

B.   The District Court's Conclusion That Plaintiff Does Not Allege A Fraud That Was Not A Subject Matter Of The Settlement Agreement Ignores The Limiting Terms Of The Settlement Agreement, And Interprets The Ambiguities In The Settlement Agreement In Defendant's Favor ........................................ 21

C.   *Centro* Is Distinguishable For Numerous Reasons ........................... 25

POINT II

THE DISTRICT COURT INCORRECTLY HELD THAT PLAINTIFF FAILED TO ALLEGE JUSTIFIABLE RELIANCE ............................. 31

POINT III

THE DISTRICT COURT WRONGLY INTERPRETED THE SETTLEMENT AGREEMENT IN DEFENDANT'S FAVOR ............. 34

A.   The Applicable Standard For Contract Interpretation ........................ 34

B.   The District Court Wrongly Resolved Ambiguities In Defendant's Favor And Held That The Settlement Agreement Is Unambiguous .............................................. 35

    1.   The District Court Failed To Determine Whether The Settlement Agreement is Ambiguous *With Respect To The Issues In Dispute* ............................................. 35

    2.   The District Court Actually Acknowledges That The Settlement Agreement Is Ambiguous ................................. 38

    3.   The Settlement Agreement Itself Explicitly Recognizes The Existence Of "Products" That Are Outside The Scope Of The Release Of The Products ............................. 39

    4.   The District Court's Interpretation Of The Settlement Agreement Would Render The Provisions Concerning Plaintiff's Payment Of Compensation To A Third Party Distributor Superfluous .................................................. 40

5.   The District Court Improperly Failed To Consider The Context
     In Which The Settlement Agreement Was Executed ................    41

6.   Given Plaintiff's Allegations Of Fraud, The District Court
     Erred By Refusing To Consider The Availability Of Parol
     Evidence .........................................................................    44

POINT IV

     THE DISTRICT COURT'S DISMISSAL OF PLAINTIFF'S
     RESCISSION CLAIM WAS IMPROPER ...............................    45

CONCLUSION ...........................................................................    47

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566
   (2d Cir. 2005) ....................................................................... 46

*Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40 (2d Cir. 1991)................. 20, 45

*Alston v. 1749-1753 First Ave. Garage Corp.*, 2013 WL 3340484
   (E.D.N.Y. July 2, 2013).............................................................. 43

*Anger v. Ford Motor Co.*, 80 A.D.2d 736 (4th Dep't 1981) ...................... 19, 46

*Arfa v. Zamir,* 17 N.Y.3d 737 (2011) ........................................... 33

*Askins v. Doe No. 1*, 727 F.3d 248 (2d Cir. 2013)................................ 16

*Assurance Co. v. Pulin,* 142 N.Y.S.2d 809 (1st Dep't 1955) ..................... 46-47

*Atwater & Co.*, 246 N.Y. 519 (1927)............................................. 42

*Bank of N.Y. Trust, N.A. v. Franklin Advisors, Inc.*, 522 F. Supp. 2d 632
   (S.D.N.Y. 2007)....................................................................... 43

*Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905 (2d Cir. 2010).......... 36

*Bellefonte Inc. Co. v. Argonaut Inc. Co.*, 757 F.2d 523
   (2d Cir. 1985) ....................................................... 33, n.3, 45, 46, n.7

*Bloss v. Va-ad Harabonim of Riverdale*, 203 A.D.2d 36
   (1st Dep't 1994)................................................................. 19, 21, 41

*Braddock v. Braddock*, 60 A.D.3d 84 (1st Dep't 2009) ............................ 30, 33

*Brooklyn Nat'l Bank of N.Y. v. Werblow,* 263 A.D. 884
   (1st Dep't 1942)....................................................................... 30

*Byrnes v. Nat'l Union Ins. Co.*, 34 A.D.2d 872 (3d Dep't 1970)................ 19

*C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc.*,
   419 F. Supp. 2d 419 (S.D.N.Y. 2005)....................................... 20

*Cahill v. Regan,* 5 N.Y.2d 292 (1959) ........................................................... 23, 38

*Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.,*
17 N.Y.3d 269 (2011) ............................................................................... *passim*

*Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.,*
76 A.D.3d 310, 315 (1st Dep't 2010) ........................................................ 27-28

*Century 21, Inc. v. F.W. Woolworth, Co.,* 181 A.D.2d 620
(1st Dep't 1992) ......................................................................................... 31, n.2

*Channel Master Corp. v. Aluminum Ltd. Sales,* 4 N.Y.2d 403 (1958) ........ 31, n.2

*Clinton Street Food Corp.,* 254 B.R. 523 (Bankr. S.D.N.Y. 2000) ............. 38, n.5

*Consorcio Prodipe, S.A. de. C.V. v. Vinci, S.A.,* 544 F. Supp. 2d 178
(S.D.N.Y. 2008) ......................................................................................... 46, n.7

*Convergent Wealth Advisors LLC v. Lydian Holding Co.,*
2012 WL 2148221 (S.D.N.Y. June 13, 2012) ........................................... 42

*DDJ Mgmt., LLC v. Rhone Group L.L.C.,* 15 N.Y.3d 147
(2010) ........................................................................................ 18, 29, 30, 32, 33

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,*
375 F.3d 168 (2d Cir. 2004) ..................................................................... 16, 41

*Farber v. Breslin,* 47 A.D.3d 873 (2d Dep't 2008) ..................................... 18

*Galli v. Metz,* 973 F.2d 145 (2d Cir. 1992) ................................................. 40, n.6

*Garza v. Marine Transport Lines Inc.,* 861 F.2d 23 (2d Cir. 1988) ........... 40, n.6

*Gibli v. Kadosh,* 279 A.D.2d 35 (1st Dep't 2000) ...................................... 18

*Gonzalez v. 40 W. Burnside Ave. LLC,* 107 A.D.3d 542
(1st Dep't 2013) ........................................................................ 18, 21, 30, 34

*Haskell v. Miller,* 221 A. D. 48 (1st Dep't 1927), *affd* 246 N.Y. 618
(1927) ......................................................................................................... 22

*In re Actrade Financial Techs., Ltd.,* 424 B.R. 59
(Bankr. S.D.N.Y. 2009) ............................................................................. 22-23

*In re Uni-Rty Corp.,* 191 B.R. 595 (S.D.N.Y. Bankr. 1996) ....................... 44

*Int'l Multifoods Corp. v. Commercial Union,* 309 F.3d 76
    (2d Cir. 2002) ....................................................... 40, n.6

*Kobrand Corp. v. Abadia Retuerta S.A.,* 2012 WL 5851139
    (S.D.N.Y. Nov. 19, 2012)........................................... 42

*Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.,* 595 F.3d 458
    (2d Cir. 2010) ....................................................... 36

*Lawyers' Fund for Client Protection of State of N.Y. v. Bank Leumi
    Trust Co.,* 94 N.Y.2d 398 (2000) ............................... 40, n.6

*Lefrak SBN Assoc. v. Kennedy Galleries,* 203 A.D.2d 256
    (2d Dep't 1994) ..................................................... 37

*Lexington Ins. Co. v. Combustion Eng'g,* 264 A.D.2d 319
    (1st Dep't 1999)..................................................... 22

*Lobel v. Maimonides Med. Ctr.,* 39 A.D.3d 275 (1st Dep't 2007).............. 19

*Lucent Technologies, Inc. v. Gateway, Inc.,* 470 F. Supp. 2d 1195
    (S.D. Cal. 2007)..................................................... 38, n.5

*Malmsteen v. Universal Music Grp., Inc.,* 2012 WL 2159281
    (S.D.N.Y. June 14, 2012) ......................................... 34, 42

*Mangini v. McClurg,* 24 N.Y.2d 556 (1969) ................................. 23

*Middle East Banking Co. v. State St. Bank Int'l,* 821 F.2d 897
    (2d Cir. 1987) ....................................................... 46

*Mitchell v. Mitchell,* 170 A.D. 452 (1st Dep't 1915)........................... 22

*Morales v. Solomon Mgt. Co., LLC,* 38 A.D.3d 381 (1st Dep't 2007)......... 22

*Morgan Stanley Group Inc. v. New Eng. Ins. Co.,* 225 F.3d 270
    (2d Cir. 2000) ....................................................... 35, 42

*Natt v. White Sands Condo.,* 95 A.D.3d 848 (2d Dep't 2012).................... 34, 35

*Newin Corp. v. Hartford Acc. & Indem. Co.,* 37 N.Y.2d 211 (1975).......... 19

*Ofman v. Campos,* 12 A.D.3d 581 (2d Dep't 2004) .................................... 37

*Polygram Holding, Inc. v. Cafaro*, 42 A.D.3d 339 (1st Dep't 2007).......... 44

*Rubinstein v. Rubinstein,* 109 N.Y.S.2d 725 (Sup. Ct. N.Y. Cnty. 1951),
    *affd,* 279 A.D. 1073 (1st Dep't 1952), *affd,* 305 N.Y. 746 (1953)........... 22

*Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*,
    7 F.3d 1091 (2d Cir. 1993) ......................................................... 40, n.6

*Schine v. Schine*, 250 F. Supp. 822 (S.D.N.Y. 1966) ................................ 33, n.3

*Scholastic, Inc. v. Harris,* 259 F.3d 73 (2d Cir. 2001) .............................. 40, n.6

*Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322
    (S.D.N.Y. 2010)......................................................................... 34

*Sheridan Drive-In, Inc. v. State,* 228 N.Y.S.2d 576 (4th Dep't 1962) ........ 47

*Simon v. Simon,* 274 A.D. 447 (1st Dep't 1948) ...................................... 23, 25, 38

*Steen v. Bump,* 233 A.D.2d 583 (3d Dep't 1996) ...................................... 18

*Sweeny v. Richter*, 2013 N.Y. Slip. Op. 3067
    (Sup. Ct. N.Y. Co. April 8, 2013) ............................................. 41

*Talansky v. Schulman*, 1 A.D.3d 355 (1st Dep't 2003) ............................. 30, 33-34

*Telerep, LLC v. U.S. Int'l Media, LLC,* 74 A.D. 3d 401
    (1st Dep't 2010)......................................................................... 35

*Thomas v. Scutt*, 127 N.Y. 133 (1891)..................................................... 44

*Utica City Nat'l Bank v. Gunn,* 222 N.Y. 204 (1918) ............................... 42

*Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703 (2d Cir. 2010)........... 16

*W.L. Christopher, Inc. v. Seamen's Bank for Sav.*, 144 A.D.2d 809
    (3d Dep't 1988) ......................................................................... 44

*World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.,* 345 F.3d 154
    (2d Cir. 2003) ........................................................................... 41

**Statutes:**

28 U.S.C. § 1291 ................................................................. 1

28 U.S.C. § 1332 ................................................................. 1

FRAP 4(a)(ii) ..................................................................... 1

FRAP 4(a)(iv) .................................................................... 1

FRAP 4(a)(vi) .................................................................... 1

FRCP 9(b) ........................................................................ 3

FRCP 12(b)(6) ............................................................. 3, 16, 20

## PRELIMINARY STATEMENT

This is an appeal by Plaintiff-Appellant Morefun Co. Ltd. from a final judgment of the United States District Court for the Southern District of New York (A41) dismissing Plaintiff's amended complaint, dated January 17, 2014 (the "Complaint"). The district court's original Opinion and Order dismissing the Complaint (A31-A40) is not reported in the Federal Supplement.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  Plaintiff-Appellant Morefun Co. Ltd. is a corporation duly organized and existing under the laws of Korea.  Defendant Mario Badescu Skin Care Inc. is a corporation organized and existing under the laws of the State of New York, with a principal place of business in New York, New York.  The amount in controversy exceeds $75,000.  The existence of personal jurisdiction over the defendant is not an issue in this appeal.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.  The district court entered judgment on June 10, 2014, dismissing the complaint for failure to state a claim. (A41.)  On July 2, 2014, Plaintiff filed its notice of appeal. The notice was timely under FRAP 4(a)(ii), (iv), and (vi). (A42.)

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Whether the district court erred in holding that plaintiff's claims are barred by a settlement agreement where plaintiff explicitly alleged that it was fraudulently induced into that settlement agreement.

2.      Whether the district court erred in holding that the parties' settlement agreement was unambiguous and not limited to the specific matters described therein and which were in dispute when the settlement agreement was executed.

3.      Whether the district court erred in dismissing plaintiff's fraudulent inducement claim on the grounds that plaintiff did not allege reasonable reliance, despite plaintiff's allegations that it relied on defendant's misrepresentations.

4.      Whether the district court erred in holding that plaintiff could not state a rescission claim.

## STATEMENT OF THE CASE

### A.    Procedural History

Plaintiff-Appellant Morefun Co. Ltd. ("Plaintiff") commenced this action in the United States District Court for the Southern District of New York and asserted claims related to a contract with Defendant Mario Badescu Skin Care Inc. ("Defendant") pursuant to which Plaintiff was appointed as the exclusive distributor of certain of Defendant's products in the Republic of Korea (the "Distributorship Agreement") for:  breach of contract, breach of express and implied warranties, failure to conform to express and implied specifications under the New York Uniform Commercial Code, fraud, negligent misrepresentation, indemnification and rescission. (A8-22.)  On February 7, 2014, Defendant moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). (A23-24.)  By a June 6, 2014, Opinion and Order, United States District Judge Lorna G. Schofield granted Defendant's motion. (A31-40.)  On June 10, 2014, the Clerk of the Court for the United States District Court for the Southern District of New York entered a Judgment dismissing the case. (A41.)  Plaintiff filed its appeal from the June 6, 2014, Opinion and Order and the June 10, 2014 Judgment on July 2, 2014. (A42.)  The Opinion and Order and the Judgment are not reported in the Federal Supplement.

**B.**     **Plaintiff Enters Into A Distributorship Agreement With Defendant**

On or about November 30, 2011, Plaintiff entered into the Distributorship Agreement with Defendant. (Complaint ¶ 11) (A10).  In the Distributorship Agreement, Defendant represented and warranted to Plaintiff that "all products are guaranteed against manufacturing defects." (*Id.*) (A12).  Defendant also provided Plaintiff with a Certificate of Manufacture (the "Certificate") listing the ingredients in the products to be purchased under the Distributorship Agreement, none of which were steroids. (*Id.* ¶¶ 13, 14) (A12).

**C.**     **After Plaintiff Purchases Seven Batches Of Products Under The Distributorship Agreement, The Korean Food And Drug Administration Orders A Recall Of Batch 372 (Only)**

Pursuant to the Distributorship Agreement, Plaintiff purchased seven batches of products from Defendant, with the following batch numbers:  1204009040; 1205009288; 1206009372; 1208009616; 1208009693; 1208009739; and 1209009739 (collectively, the "Batches"). (Complaint ¶ 15) (A11).  Thereafter, Morefun entered into a contract with a distributor and, between the months of May 2012 and October 2012, approximately 34,530 units from the Batches were sold in the Republic of Korea. (Complaint ¶ 17) (A11).

In or around June 2012, customers inquired about the possible inclusion of steroids in certain of Defendant's products. (Complaint ¶ 18) (A11).  And, in September 2012, the Korean Food and Drug Administration (the "KFDA")

4

concluded that batch number 1206009372 ("Batch 372") contained a prohibited raw steroid material. (Complaint ¶¶ 20-21) (A11).  As a result, on December 14, 2012, the KFDA initiated a recall order mandating the recall and destruction of Batch 372 (the "Recall" or "Recall Order"). (Complaint ¶ 22) (A12).

**D.    Plaintiff Suffers $900,000 In Damages And Is Fraudulently Induced To Enter Into A Settlement Agreement Concerning Those Damages That It Suffered From The Recall Of Batch 372**

As a result of the Recall Order of Batch 372, Plaintiff was required to compensate its customers and its local distributor in the approximate amount of $900,000. (Complaint ¶ 24) (A12).

Given the Recall of Batch 372, Plaintiff was concerned that the Batches other than Batch 372 might contain steroids, and asked Defendant if steroids were present in those other Batches. (Complaint ¶ 25) (A12).  In response to Plaintiff's inquiries as to the other Batches of products, and in order to deceive Plaintiff, Defendant repeatedly stated to Plaintiff that Plaintiff need not be concerned about the other Batches of products and made false representations regarding those Batches. (Complaint ¶ 26) (A12).

For example, on October 26, 2012, Defendant represented that "the product we sent you does not match this formula due to us sending you the wrong batch." (Complaint ¶ 27) (A12).  On or about January 2013, Defendant represented that

5

Batch 372 was actually a test trial product that was mistakenly sent to Plaintiff. (Complaint ¶ 28) (A12).

In addition, the KFDA required Plaintiff to provide samples of the other Batches of products to the KFDA in order to avoid a recall of those other Batches. To this end, in December 2012 and January 2013, Defendant falsely represented to Plaintiff that "we have tested the batches of healing cream," and steroids were not present. (Complaint ¶ 30) (A13). In December 2012 and January 2013, Defendant sent Plaintiff samples of products that did not contain steroids to provide to the KFDA for testing. The KFDA confirmed that those batches did not contain any steroids. As such, the Batches other than Batch 372 were not recalled by the KFDA. (Complaint ¶¶ 31, 44) (A13, A15).

However, Defendant knew that the samples that it provided to Plaintiff were not representative of the other Batches but intentionally misrepresented the facts with the intent of inducing Plaintiff into settling its claims relating to the Recall of Batch 372. (Complaint ¶ 32) (A13).

Plaintiff, as a distributor of Defendant's product, did not have the ability to test or verify Defendant's representations that Batch 372 was the only contaminated batch and that all other Batches did not contain steroids or other contamination, and Plaintiff reasonably relied on Defendant's false representations, including the false samples provided to the KFDA. (Complaint ¶ 33) (A13).

6

Based on Defendant's representations that only Batch 372 contained steroids, which representations were supported by false samples provided to the KFDA, Plaintiff and Defendant engaged in settlement discussions concerning the $900,000 in damages that Plaintiff incurred as a result of the Recall of Batch 372. (Complaint ¶ 34) (A13).

Defendant initially agreed to reimburse Plaintiff for $300,000 of the $900,000 in damages but, ultimately, based on Defendant's representations that only Batch 372 contained steroids and that the Settlement Agreement only concerned Batch 372, on June 10, 2013, Plaintiff and Defendant entered into the Settlement Agreement pursuant to which Defendant agreed to pay Plaintiff $492,000 to compensate Plaintiff for the $900,000 in damages resulting from the Recall of Batch 372. (Complaint ¶¶ 35, 36) (A14).

**E.    Defendant's Fraud Is Revealed When The KFDA Recalls Each Batch Of The Products**

When the parties entered into the Settlement Agreement, Defendant knew that the intent of the Settlement Agreement was only to release claims relating to Batch 372. Indeed, prior to entering into the Settlement Agreement, only Batch 372 had been recalled and Defendant represented that those Batches did not contain steroids. (Complaint ¶ 38) (A14). Moreover, WHEREAS clause "C" of the Settlement Agreement explicitly provides that the Settlement Agreement relates to "consumers [who] filed various complaints in respect of the Product, due to which

7

MF has provided compensation to said third-party distributor." (Settlement Agreement § C) (A28). As explained above, Batch 372 was the only one of the Batches subject to customer complaints at the time the Settlement Agreement was signed, and, moreover, Defendant provided samples to Plaintiff that demonstrated that there was no need to question the composition of any other Batches. As such, the parties clearly intended to limit the Settlement Agreement to Batch 372 only. (Complaint ¶ 39) (A14).

While the Settlement Agreement, which was prepared by Defendant, does not define "products," and, as explained above, Plaintiff and Defendant understood that it was only meant to cover damages relating to the Recall of Batch 372, when Defendant drafted the Settlement Agreement, it did so with the specific intent to deceive Plaintiff by later claiming that the Settlement Agreement provided a release of Defendant from any damages to Plaintiff caused by any harm resulting from Batches other than Batch 372. (Complaint ¶ 37) (A14).

Plaintiff alleges in the Complaint that when Defendant drafted the Settlement Agreement, not only had Defendant falsely represented to Plaintiff that all of the remaining Batches did not contain steroids (so that Plaintiff had no reason to believe it needed to settle any claims relating to any other Batches), but Defendant also purposely drafted the Settlement Agreement with the intent of later claiming (contrary to its repeated representations to Plaintiff) that the Settlement

8

Agreement provided a release of Defendant from damages to Plaintiff caused by any harm resulting from Batches other than Batch 372. (Complaint ¶ 47) (A16).

However, even assuming *arguendo* that the Settlement Agreement could be read to apply to all of the Batches, as explained above, Plaintiff was defrauded into entering into the Settlement Agreement based on Defendant's fraudulent conduct, including:  (1) Defendant's false representation that only Batch 372 had steroids in it because Batch 372 was sent by mistake; (2) Defendant's false representation that only Batch 372 had steroids in it because Batch 372 was a trial batch; (3) Defendant's false representation that Defendant had tested the remaining Batches and those Batches did not contain steroids; and (4) Defendant's shipment of samples to Plaintiff that did not contain steroids, which Defendant falsely represented to be accurate representations of the remaining Batches. (Complaint ¶ 48) (A16).

In July 2013, after Plaintiff agreed to the Settlement Agreement, it was broadcast in Korea that independent tests on the remaining Batches that had not been recalled did, in fact, contain steroids.  As a result, all of the remaining Batches had to be recalled. (Complaint ¶¶ 45-46) (A15).  Ultimately, the recall of all of the Batches of the products, after the initial recall of  Batch 372, resulted in damages to Plaintiff in an amount to be determined at trial, but in no event less than $1,700,000. (Complaint ¶ 49) (A16.)

9

Based on the foregoing, on January 21, 2014, Plaintiff filed its amended alleging causes of action for:  (1) breach of the Distributorship Agreement and the express warranty therein; (2) non-conformity of goods under the New York Uniform Commercial Code; (3) breach of implied warranty; (4) fraudulent/negligent misrepresentation; (5) indemnification; and, in the alternative, (6) rescission of the Settlement Agreement. (A8-A22.)

**F.**     **The District Court Decision**

Defendant moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In an Opinion and Order, dated June 6, 2014, the district court dismissed the Complaint on the grounds that all of Plaintiff's claims are Barred by the Settlement Agreement.  (A31-A40.)

## SUMMARY OF ARGUMENT

The Complaint contains detailed allegations that Plaintiff was fraudulently induced to enter into the Settlement Agreement based on Defendant's repeated misrepresentations and fraudulent conduct, including providing bogus samples to Plaintiff for testing by the KFDA that did not contain steroids.  Plaintiff further alleges that while Defendant knew that Plaintiff therefore had no reason to believe that it needed to settle any claims relating to any other Batches and that the Settlement Agreement only concerned Batch 372, Defendant purposely drafted the Settlement Agreement with the intent of later claiming (as it does now) that the Settlement Agreement released Defendant from liability for damages relating to harm resulting from Batches other than Batch 372.

As explained below, Plaintiff's allegations that Defendant fraudulently induced Plaintiff into the Settlement Agreement based upon Defendant's explicit fraudulent misrepresentations and intent when drafting the Settlement Agreement are precisely the type of allegations of fraud in connection with the procuring of a release that warrant the denial of a motion to dismiss based on such a release.  For this reason alone, this Court should reverse the district court's decision granting Defendant's motion to dismiss.

In addition, in order to hold that each of Plaintiff's causes of action is barred by the Settlement Agreement, and that the fraud alleged in the Complaint is not

11

collateral to the matters in dispute prior to entering into the Settlement Agreement, the district court essentially ignored the allegations of the Complaint and the explicit terms of the Settlement Agreement that demonstrate the purpose and intent of the Settlement Agreement.

Contrary to the district court's holding that Plaintiff's fraud claim is "the subject matter of the contract," any reasonable review of the Settlement Agreement demonstrates that it only concerned matters "arising from or in connection with [Plaintiff's] purchase or sale of the Product from [Defendant]" for which "consumers have filed various complaints in respect of the Product, due to which MF has provided compensation to [a] third party distributor." (A29.)

Thus, the Settlement Agreement is limited by its own terms to products: (1) that were sold, (2) for which consumers filed complaints, and (3) about which Plaintiff compensated a third-party distributor, in the amount of $900,000. The $900,0000 in damages is not the damages that Plaintiff is seeking in the Complaint. As such, the District Court's conclusion that Plaintiff does not allege a fraud that was not a subject matter of the Settlement Agreement ignores the limiting terms of the Settlement Agreement, which must be considered as a matter of law, and interprets the agreement, which was drafted by Defendant, in Defendant's favor.

The district court's holding that the Settlement Agreement is unambiguous is also incorrect for multiple reasons.

12

As an initial matter, the district court's holding that "Plaintiff's interpretation of the Settlement Agreement requires parol evidence to read the terms of the Settlement Agreement, because it requires evidence that only Batch 372 had been bought and sold prior to signing the agreement" (A36) is actually a telling acknowledgement that an ambiguity exits concerning the meaning of the terms "Product" and "compensation to [a] third party distributor" in connection with complaints that were made. (A28.)  Contrary to the district court's conclusion, here, extrinsic evidence would not create an ambiguity but, rather, would clarify the ambiguity about which products are covered.

As such, and given Plaintiff's detailed allegations of Defendant's fraud and the ambiguity in the Settlement Agreement itself, the district court was also incorrect when it refused to consider that parol evidence is necessary to determine the scope of the release in the Settlement Agreement.

The district court's interpretation would also render the provisions in the Settlement Agreement concerning "consumers [who] filed various complaints in respect of the Product, due to which MF has provided compensation to [a] third party distributor" in the amount of $900,000 (A12, A28-A29) superfluous, a view unsupportable under standard principles of contract interpretation.

13

In addition, the Settlement Agreement itself explicitly recognizes the existence of "Products" that are outside the scope of the release, including: (1) "the purchase of further products" (Settlement Agreement, Section 2(c)) (A28), (2) "the purchase of MBSC products other than the Product." (Settlement Agreement, Section 2(d)) (A28), and (3) "the distribution of sale of any other [of Defendant's] product." (Settlement Agreement, Section 4) (A29).

While Plaintiff submits that at the pleading stage the ambiguities in the Settlement Agreement itself required the denial of Defendant's motion to dismiss, the allegations of the intent of the parties to the Settlement Agreement and the terms of the Settlement Agreement itself demonstrate that the parties only ever intended to release claims with respect to Batch 372, because the Settlement Agreement arose from the damages that Plaintiff suffered in the amount of $900,000 caused by the Recall of Batch 372.

The district court relied almost exclusively on *Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 17 N.Y.3d 269 (2011), but that case is distinguishable for numerous reasons. Among other things, not only was the release at issue in *Centro* plainly much broader than the release in the Settlement Agreement, but that release explicitly released claims "arising under or in connection" with the "Agreement" itself. By contrast, here, the Settlement Agreement does not in any way contain a release of claims relating the Settlement

14

Agreement itself.  Thus, by its terms, the release does not purport to release fraud claims relating to entering into the Settlement Agreement itself, such as the release at issue in *Centro*.  In addition, in *Centro* plaintiffs acknowledged that their claims fell squarely within the plain terms of the release at issue. Here, Plaintiff vigorously contests Defendant's interpretation of the release.

      The district court also held that the Complaint fails to state a claim for fraudulent inducement because Plaintiff cannot plead justifiable reliance. However, that decision was based on the district court's determination that "Plaintiff  . . . knew . . . of Defendant's duplicity as to Batch 372 and yet relied on Defendant's representations as to the remaining six batches." (A38.)  However, to the contrary, nowhere in the Complaint does Plaintiff in any way allege that it was aware of any duplicity on Defendant's part.  To the contrary, the Complaint alleges that Defendant provided Plaintiff with repeated assurances, including by providing false samples which were tested, and cleared, by the KFDA.  In any event, given the detailed allegations of Plaintiff's reliance on Defendant's fraud in the Complaint, at the very minimum, there is an issue of fact as to whether Plaintiff justifiably relied upon Plaintiff's representations, which the district court should not have decided in the context of a motion to dismiss.

      Finally, the district court's holding dismissing Plaintiff's rescission claim is based on its improper decision that Plaintiff did not allege a fraud collateral to the

15

settlement agreement.  Plaintiff plainly pleads an actionable cause of action for rescission, and the district court's dismissal of that claim should therefore be reversed.

Based on the foregoing, the Court should reverse the district court's decision granting Defendant's motion to dismiss.

## STANDARD OF REVIEW

The district court's dismissal of a complaint under FED. R. CIV. P. 12(b)(6) is reviewed de novo. *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010), accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff. *Askins v. Doe No. 1*, 727 F.3d 248, 252-53 (2d Cir. 2013).

A "complaint should not be dismissed for insufficiency [under Rule 12(b)(6)] unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 176-77 (2d Cir. 2004).  The issue for consideration on a motion to dismiss is not whether Plaintiff "will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Id.*

16

# ARGUMENT

## POINT I

### THE DISTRICT COURT'S HOLDING THAT PLAINTIFF'S CLAIMS ARE BARRED BY THE SETTLEMENT AGREEMENT IS INCORRECT

**A.     Plaintiff's Detailed Allegations That The Release Was Procured By Defendants' Fraud Warranted The Denial Of The Motion To Dismiss**

Plaintiff alleges in the Complaint that it was fraudulently induced to enter into the Settlement Agreement based on Defendant's knowingly false representations that:  (1) only Batch 372 had steroids in it; (2) Batch 372 was sent by mistake; (3) Batch 372 was a trial batch; (4) Defendant had tested the remaining Batches and those Batches did not contain steroids; and (5) the samples that Defendant shipped to Plaintiff for testing by the KFDA that did not contain steroids were truly representative of the remaining Batches. (Complaint ¶¶ 2, 19, 23, 26-33, 44, 48) (A8-A16). The KFDA confirmed that the batches it received did not contain any steroids and, thus, they were not recalled by the KFDA. (Complaint ¶¶ 31, 44) (A13, A15).

Plaintiff also explicitly alleges that, in furtherance of Defendant's fraudulent conduct, when Defendant drafted the Settlement Agreement, it not only falsely represented to Plaintiff that all of the remaining Batches did not contain steroids, but also specifically drafted the Settlement Agreement with the intent of later claiming (as it now does in defense to the Complaint) that the Settlement

17

Agreement provided a release of Defendant from liability for damages caused by harm resulting from Batches other than Batch 372. (Complaint ¶ 47) (A16).  The district court dismissed Plaintiff's cause of action for fraudulent inducement, and each other cause of action alleged in the Complaint, on the grounds that the Settlement Agreement bars Plaintiff's claims. (A31-A40).

However, as an initial matter, New York courts recognize that granting a motion to dismiss (or even for summary judgment) is inappropriate where, as here, a plaintiff alleges a fraud in connection with the procuring of a release. *See Gonzalez v. 40 W. Burnside Ave. LLC*, 107 A.D.3d 542, 544 (1st Dep't 2013) (allegations of fraud in connection with procuring a release precluded dismissal at the pleading stage) (citing *DDJ Mgmt., LLC v. Rhone Group L.L.C.,* 15 N.Y.3d 147, 155 (2010)); *Farber v Breslin,* 47 A.D.3d 873, 876 (2d Dep't 2008) (denying motion to dismiss because the "allegations of fraud were sufficient to support a possible finding that the release signed by the plaintiff was obtained 'under circumstances which indicate unfairness'" and a dismissal based on the release "overlooks the fact that the plaintiff alleged that [defendant] procured the release by means of fraud.") (internal citations omitted) (citing *Gibli v Kadosh,* 279 A.D.2d 35, 41 (1st Dep't 2000)); *Steen v Bump,* 233 A.D.2d 583, 584 (3d Dep't 1996) ("There is no merit in defendant's contention that plaintiff's complaint should have been dismissed as a matter of law because of the release.

18

Plaintiff's factual allegations of fraud in the procurement of the release were

sufficient to defeat defendant's CPLR 3211 motion to dismiss the

complaint"); *see also Newin Corp. v Hartford Acc. & Indem. Co.,* 37 N.Y.2d 211,

217 (1975) ("Even if that were not so, plaintiffs allege that the release's execution

was improperly obtained. Such a claim is well recognized and, in and of itself

would be sufficient to support a denial of this branch of the motion.") (internal

citations omitted) (citing *Byrnes v Nat'l Union Ins. Co.*, 34 A.D.2d 872 (3d Dep't

1970)) ("the appellants are not seeking to reinstate the underlying cause of action

for wrongful death which would, of course, require the rescission of a valid release

prior to bringing that cause of action but rather are affirming the release and suing

for damages for fraud in its procurement. This is a perfectly legitimate alternative

available to the appellants"); *Lobel v. Maimonides Med. Ctr.*, 39 A.D.3d 275, 276

(1st Dep't 2007) (denying motion to dismiss, because a "release may be voided on

the basis of fraud in the inducement, even when it results from prolonged

negotiations by represented parties"); *Bloss v. Va-ad Harabonim of Riverdale*, 203

A.D.2d 36, 37 (1st Dep't 1994) (denying motion for  summary judgment based on

"allegations concerning the circumstances leading up to the execution of the

release…" because "[w]here fraud or duress in the procurement of a release is

alleged, a motion to dismiss should be denied."); *Anger v. Ford Motor Co.*, 80

A.D.2d 736 (4th Dep't 1981) ("Where a complaint alleges fraud or duress in the

procurement of a release either by way of an equitable action to rescind or by way of an action at law for damages sustained as a result of the release, a motion to dismiss which is based solely on the release should be denied.").

The Second Circuit has similarly found that where a plaintiff alleges that it was "induced by fraud into signing [] releases" those releases should be denied effect in connection with a motion to dismiss. *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (reversing district court's Rule 12(b)(6) dismissal of claims based upon releases that plaintiffs alleged were obtained by fraud). *See also C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 429 (S.D.N.Y. 2005) (even where a release is enforceable, "it does not preclude claims for . . . fraudulent inducement, which cannot be released").

Here, the allegations that Defendant fraudulently induced Plaintiff into the Settlement Agreement based upon Defendant's explicit fraudulent representations and intent when drafting the Settlement Agreement are precisely the type of allegations of fraud in connection with procuring a release which should preclude dismissal of Plaintiff's fraud claim.

Accordingly, this Court should reverse the district court's decision granting Defendant's motion to dismiss.

**B.    The District Court's Conclusion That Plaintiff Does Not Allege A Fraud That Was Not A Subject Matter Of The Settlement Agreement Ignores The Limiting Terms Of The Settlement Agreement, And Interprets The <u>Ambiguities In The Settlement Agreement In Defendant's Favor</u>**

The district court stated that the New York decisions that hold that allegations that a defendant obtained a release by fraudulent means preclude dismissal at the pleading stage are inapposite "as they involved fraud collateral to the contract, and not a fraud that was the subject matter of the contract." (A39) (citing *Gonzalez,* 968 N.Y.S.2d 50 and *Bloss,* 610 N.Y.S.2d 197).

However, in order to conclude that Plaintiff's fraud claim is "the subject matter of the contract" (A39) (and thus not collateral to the claims released in the Settlement Agreement), the district court necessarily ignored the fact that the release contained in the Settlement Agreement only covered matters "arising from or in connection with [Plaintiff's] purchase or sale of the Product from [Defendant]" for which "consumers have filed various complaints in respect of the Product, due to which MF has provided compensation to [a] third party distributor." (Settlement Agreement, WHEREAS clause C and § 4)  (A28-A29).

As discussed herein, by its terms, this release does not purport to release fraud claims relating to entering into the Settlement Agreement itself, such as the release at issue in *Centro*, and is limited to the sales that plaintiff made for which it was required to compensate a third-party distributor in the amount of $900,000. (*Id*.)  As such, as a matter of fact, Plaintiff's fraud claims are collateral to the

21

claims at issue in the Settlement Agreement, including any fraud claim allegedly released in the Settlement Agreement.  The same is true as a matter of law.

Indeed, "it has long been the law that 'where a release contains a recital of a particular claim, obligation or controversy and there is nothing on the face of the instrument other than general words of release to show that anything more than the matters particularly specified was intended to be discharged, the general words of release are deemed to be limited thereby'" *Morales v Solomon Mgt. Co., LLC,* 38 A.D.3d 381, 382 (1st Dep't 2007) (citing *Mitchell v Mitchell,* 170 A.D. 452, 456 (1st Dep't 1915) and *Haskell v Miller,* 221 A. D. 48, 48 (1st Dep't 1927), *affd* 246 N.Y. 618 (1927) ("The cotton account, a distinct and separate transaction between the parties, was then in existence, and as already appears, not referred to even by indirection or implication"); *Lexington Ins. Co. v. Combustion Eng'g,* 264 A.D.2d 319, 321-322 (1st Dep't 1999) ("Where the language of a release is to be limited to only particular claims, demands, or obligations the instrument will be operative as to those matters alone, and will not release other claims, demands or obligations.") (internal quotation marks omitted); *Rubinstein v. Rubinstein,* 109 N.Y.S.2d 725, 732 (Sup. Ct.  N.Y. Cnty. 1951), *affd,* 279 A.D. 1073 (1st Dep't 1952), *affd,* 305 N.Y. 746 (1953) (settlement agreements containing recitals regarding particular claims limited the general words of a release to the claims that were within the parties' contemplation.); *see also In re Actrade Financial Techs., Ltd.,* 424 B.R. 59

22

(Bankr. S.D.N.Y. 2009) (release that employs language that is general and broad and "when read in isolation covers *all* claims . . . would be conclusive but for the principle of New York law that a release, general on its face, will be limited to those claims within the contemplation of the parties at the time").

In fact, "the cases are many in which the release has been avoided with respect to uncontemplated transactions despite the generality of the language in the release form." *Mangini v. McClurg,* 24 N.Y.2d 556, 562 (1969) (*citing Cahill v. Regan,* 5 N.Y.2d 292, 299-300 (1959) ("[a]lthough the effect of a general release, in the absence of fraud or mutual mistake, cannot be limited or curtailed ... its meaning and coverage necessarily depend, as in the case of contracts generally, upon the controversy being settled and upon the purpose for which the release was actually given. Certainly, a release may not be read to cover matters which the parties did not desire or intend to dispose of."); *Simon v. Simon,* 274 A.D. 447, 449 (1st Dep't 1948) ("There was nothing, so far as is shown, . . .to indicate that there was any dispute between the parties as to the title of the articles which are the subject of the present controversy. Therefore, . . . it cannot be held as a matter of law, that any claims based on such title were barred").

Here, the recitals and language of the release demonstrate that Plaintiff's fraudulent inducement claim was in no way contemplated or covered by the Settlement Agreement, and was collateral to any claim released in the Settlement

Agreement, i.e., a claim "arising from or in connection with [Plaintiff's] purchase or sale of the Product from [Defendant]" for which "consumers have filed various complaints in respect of the Product, due to which MF has provided compensation to [a] third party distributor" (Settlement Agreement, WHEREAS clause C and § 4)  (A28-A29) in the amount of $900,000 (Complaint ¶ 24) (A12).

In addition, the district court's conclusion that "[t]he Amended Complaint alleges no fraud other than Defendant's misrepresentations that the Product was steroid free" ignores:  (1) the detailed allegations in the Complaint about Defendant's fraudulent conduct,[1] and (2) that the fraud alleged in the Complaint also concerns Plaintiff's allegations that Defendant drafted the Settlement Agreement with the intent of later claiming that the Settlement Agreement provided a release of Defendant from any damages caused by harm resulting from Batches other than Batch 372. (Complaint ¶ 47) (A16).

Thus, the district court was only partially correct when it stated "[t]he Settlement Agreement's subject matter was the damage Plaintiff sustained when it sold the Product in Korea, which Defendant had misrepresented was steroid free," because the district court omitted that the subject of the Settlement Agreement is

---

[1] Defendant's knowingly false representations include its representations that:  (1) only Batch 372 had steroids in it; (2) Batch 372 was sent by mistake; (3) Batch 372 was a trial batch; (4) Defendant had tested the remaining Batches and those Batches did not contain steroids; and (5) the samples that Defendant shipped to Plaintiff that did not contain steroids were accurate representations of the remaining Batches. (Complaint ¶¶ 2, 19, 23, 26-33, 44, 48) (A8-A16).

24

actually the $900,000 in damages resulting from the fact that "consumers have filed various complaints in respect of the Product, due to which MF has provided compensation to [a] third party distributor" (Settlement Agreement, WHEREAS clause C and § 4) (A28-A29).   In addition, the $900,0000 in damages is not the damages that Plaintiff is seeking in the Complaint.

Accordingly, the Court should reverse the district court's decision granting Defendant's motion to dismiss.  *See, e.g., Simon*, 274 A.D. at 449 ("[w]hether a release is to be treated as including all possible claims depends upon the purpose for which the release is given" and "[u]nder the plaintiff's testimony, the matter could not have been within the contemplation of the release that was given").

## C.   *Centro* **Is Distinguishable For Numerous Reasons**

The district court relied on the decision in *Centro*, 17 N.Y.3d 269 (2011), to dismiss Plaintiff's causes of action based on the release contained in the Settlement Agreement. (A37-A39.)  In *Centro*, plaintiffs alleged that they were induced to sell their minority interest in a mobile telephone company based on defendants' misrepresentations concerning the value of the venture that they were selling their interests in. *Id.*, at 274-275.  The court held that plaintiffs' fraud claims were barred because the general release plaintiffs provided in the purchase agreement "was intended to bar the very claims that plaintiffs now bring, and plaintiffs fail to allege that the release was induced by any fraud beyond that contemplated by the

release." *Id.* at 280.  The court also held that plaintiffs chose to cash out their interests without insisting on defendants' verification of the value or conditioning the deal on the accuracy of the information, thereby assuming a business risk, especially in light of the adversarial relationship between the parties. *Id.* at 275. *Centro* is distinguishable for numerous reasons.

First, in *Centro*, the release at issue was plainly much broader than the release in the Settlement Agreement. The release in *Centro* released claims:

> arising under or in connection with the Agreement Among Members and/or arising out of, based upon, attributable to or resulting from the ownership of membership interests in [TWE] or having taken or failed to take any action in any capacity on behalf of [TWE] or in connection with the business of [TWE].

*Id*. at 274.   By contrast, the release in the Settlement Agreement only released claims "arising from or in connection with [Plaintiff's] purchase or sale of the Product from [Defendant]." (A29).  As explained above, Plaintiff's fraud claim relates to  much more than the claim released in the Settlement Agreement, *i.e.*, claims "arising from or in connection with [Plaintiff's] purchase or sale of the Product from [Defendant]" for which "consumers have filed various complaints in respect of the Product, due to which MF has provided compensation to [a] third party distributor" in the amount of $900,000. (Settlement Agreement, WHEREAS clause "C" and § 4) (A28-A29) (Complaint ¶ 24) (A12).

26

Second, the release in *Centro* explicitly released claims "arising under or in connection" with the "Agreement" itself. *Id.* at 315.  Here, the Settlement Agreement does not in any way contain a release of claims relating to the Settlement Agreement itself.

The district court acknowledged that "the release in [*Centro*] was agreement specific," but nonetheless held that "[t]he subject of the release in the Settlement Agreement was Defendant's misrepresentations regarding the presence of steroids in the Mario Badescu Healing Cream." (A39.)   That is incorrect.  Even if "[t]he subject of the release in the Settlement Agreement was Defendant's misrepresentations regarding the presence of steroids in the Mario Badescu Healing Cream" that still does not mean that the release covered claims based on the Settlement Agreement itself, such as the release in *Centro*.  Moreover, as explained above, *supra* I.B., the subject of the release in the Settlement Agreement was matters "arising from or in connection with [Plaintiff's] purchase or sale of the Product from [Defendant]" for which "consumers have filed various complaints in respect of the Product, due to which MF has provided compensation to [a] third party distributor" in the amount of $900,000. (Settlement Agreement, WHEREAS clause "C" and § 4) (A28-A29); (Complaint ¶ 24) (A12).

Third, in *Centro*, plaintiffs did "not deny that their claims fall squarely within the plain terms of the" release at issue. *Centro Empresarial Cempresa S.A.*

27

*v. America Movil, S.A.B. de C.V.*, 76 A.D.3d 310, 315 (1st Dep't 2010).  Here, Plaintiff  vigorously contests Defendant's interpretation of the release.

Fourth, unlike in *Centro* where the agreement itself concerned the value of the company whose value plaintiff later claimed was misrepresented, here, Defendant's fraudulent conduct in connection with the Settlement Agreement was not contemplated by or addressed in any of the terms of the Settlement Agreement. As explained above, Plaintiff's fraud and fraudulent inducement claims do not "aris[e] from or in connection with [Plaintiff's] purchase or sale of the Product from [Defendant]."  Rather, they relate to Defendant's fraudulent conduct in connection with causing Plaintiff to enter into the Settlement Agreement.

Fifth, in *Centro*, the court held that the general release plaintiffs provided in the purchase agreement "was intended to bar the very claims that plaintiffs now bring, and plaintiffs fail to allege that the release was induced by any fraud beyond that contemplated by the release.*" Id.* at 280 ("The fraud described in the complaint, however, falls squarely within the scope of the release:  plaintiffs allege that defendants supplied them with false financial information regarding the value of [the target companies], and that, based on this false information, plaintiffs sold their interests in [those companies] and released defendants from claims in connection with that sale.")  As discussed above, *supra* I.B., here Plaintiff does allege a fraud that is not contemplated by the Settlement Agreement.

28

Sixth, in *Centro*, the Court noted that the minority members also "failed to allege that they justifiably relied on defendant's fraudulent statements in executing the release" because they knew that defendant "had not supplied them with the financial information necessary to properly value the TWE units, and that they were entitled to that information," 17 N.Y.3d, at 278, but nevertheless "chose to cash out their interests and release defendant from fraud claims without demanding either access to the information or assurances as to its accuracy in the form of representations and warranties." *Id.* By contrast, here, the Complaint alleges that Defendant provided Plaintiff with repeated assurances, including by providing false samples which were tested by the KFDA. Where "a plaintiff has taken reasonable steps to protect itself against deception, it should not be denied recovery merely because hindsight suggests that it might have been possible to detect the fraud when it occurred." *DDJ Mgmt.*, 15 N.Y.3d at 154 ("But plaintiffs made a significant effort to protect themselves against the possibility of false financial statements: they obtained representations and warranties to the effect that nothing in the financials was materially misleading. We decline to hold as a matter of law that plaintiffs were required to do more").

Given these allegations, at the very minimum, there is an issue of fact as to whether Plaintiff justifiably relied upon Plaintiff's representations, which the district court should not have decided in the context of a motion to dismiss. *See*

*DDJ Mgmt.,* 15 N.Y.3d at 155 ("The question of what constitutes reasonable reliance is always nettlesome because it is so fact-intensive.") (citation and quotation omitted); *Braddock v. Braddock*, 60 A.D.3d 84, 88 (1st Dep't 2009) (justifiable reliance element is "generally one of fact" and "not amenable to determination as a matter of law"); *Talansky v. Schulman*, 1 A.D.3d 355, 361 (1st Dep't 2003) ("resolution of a reasonable reliance claim is generally left to a finder of fact"); *Gonzalez*, 107 A.D.3d at 544 ("Whether the plaintiff could justifiably rely on the false representation is an issue of fact").

Finally, *Centro* is distinguishable because where, as here, the Settlement Agreement—which does not contain a bar to a claim based on the agreement itself—is central to the fraud alleged in the Complaint, it cannot serve as a bar to Plaintiff's claim that it was fraudulently induced into that agreement itself. *See Brooklyn Nat'l Bank of N.Y. v. Werblow,* 263 A.D. 884, 884-85 (1st Dep't 1942) ("Obviously the setting up of the compromise agreement as a bar to the first cause of action does not avoid plaintiff's right to recover, since plaintiff's claim is for damages sustained by reason of defendant's fraud in inducing plaintiff to execute the compromise agreement and necessarily is predicated upon the fact that the compromise agreement and all its provisions are valid and binding . . . This release does not purport to release the cause of action averred in the complaint. On the contrary, it constitutes a part of the very foundation of the cause of action

30

alleged.") (citation and internal quotation marks omitted).

Accordingly, the Court should reverse the decision of the district court granting Defendant's motion to dismiss.

## POINT II

### THE DISTRICT COURT INCORRECTLY HELD THAT PLAINTIFF FAILED TO ALLEGE JUSTIFIABLE RELIANCE

The district court held in the alternative that the Complaint fails to state a claim for fraudulent inducement as Plaintiff has not alleged justifiable reliance, because "[i]f Plaintiff was concerned about the representations Defendant made prior to the signing of the Settlement Agreement, it could have included a specific warranty in the Settlement Agreement." [2]  (A38.)  However, contrary to the district court's determination that Plaintiff was concerned because "Plaintiff  . . . knew . . . of Defendant's duplicity as to Batch 372 and yet relied on Defendant's representations as to the remaining six batches" (A38), Plaintiff does not in any way allege that it was aware of any duplicity on Defendant's part.  To the contrary, the Complaint alleges that Defendant provided Plaintiff with repeated assurances,

---

[2] *Century 21, Inc. v. F.W. Woolworth, Co*., 181 A.D.2d 620, 625 (1st Dep't 1992) (elements of causes of action for fraud and fraudulent inducement are "the representation of a material existing fact, falsity, scienter, deception and injury."); *Channel Master Corp. v. Aluminum Ltd. Sales*, 4 N.Y.2d 403, 406-07 (1958) ("one who fraudulently makes a misrepresentation of intention for the purpose of inducing another to act or refrain from action in reliance thereon . . . is liable for the harm cause by the other's justifiable reliance upon the misrepresentation") (citation and quotation omitted).

including by providing false samples which were tested, and cleared, by the

KFDA.  (*See* Complaint ¶ 19) ("Plaintiff repeatedly asked Defendant about the

claims that steroids were present in Defendant's products.  In each instance,

Defendant informed Plaintiff that the products did not contain any steroids.")

(A11).  Allowing Defendant to avoid the obligations created by its promises and

repeated representations strains the holding of *Centro* to its breaking point and

essentially precludes a party from ever asserting a fraud or fraudulent inducement

claim based on repeated representations before a release that is silent as to those

representations is executed.

    In addition, where "a plaintiff has taken reasonable steps to protect itself

against deception, it should not be denied recovery merely because hindsight

suggests that it might have been possible to detect the fraud when it occurred."

*DDJ Mgmt.*, 15 N.Y.3d at 154.  Here, Plaintiff repeatedly sought to protect itself

by requesting information about the other batches, which Defendant fraudulently

represented did not contain the steroids that were contained in Batch 372.   Among

other fraudulent misrepresentations and conduct alleged in the Complaint,

Defendant provided false samples that Plaintiff had no reason to question—

particularly after they were tested and cleared by the KFDA.  *Id.*, 15 N.Y.3d at 154

("But plaintiffs made a significant effort to protect themselves against the

possibility of false financial statements: they obtained representations and

warranties to the effect that nothing in the financials was materially misleading. We decline to hold as a matter of law that plaintiffs were required to do more").

Thus, this case is nothing like *Arfa v. Zamir,* 17 N.Y.3d 737, 739 (2011), cited by the district court, where plaintiffs "elected to release [defendant] from the very claims they now bring without investigating the extent of his alleged misconduct" or *Centro*, 17.N.Y.3d at 279 where "according to the facts alleged in the complaint, plaintiffs knew that defendants had not supplied them with the financial information necessary to properly value the TWE units . . . Yet they chose to cash out their interests and release defendants from fraud claims without demanding either access to the information or assurances as to its accuracy in the form of representations and warranties."[3]

In addition, as explained above, whether a party's reliance was justified is an issue of fact that courts generally do not decide on a motion to dismiss. *DDJ Mgmt.,* 15 N.Y.3d at 155; *Braddock*, 60 A.D.3d at 88; *Talansky*, 1 A.D.3d at 361

---

[3] The district court cites *Bellefonte Inc. Co. v. Argonaut Inc. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) for the proposition that full disclosure is not required for a release to be effective. (A37.)  However, in *Bellefonte*, this court recognized that many "cases involve[] circumstances in which the settlement or release had been part of the very transaction attacked as fraudulently induced, or other circumstances in which it was clear that no semblance of a fraud claim had come to light before the claim at issue was settled and it was clear that the parties had not intended to settle fraud claims." (citing *Schine v. Schine*, 250 F. Supp. 822, 826 (S.D.N.Y. 1966) (holding that release that was part of sale of a minority stock interest did not bar a suit for fraudulent inducement of the contract of sale, and stating "the scope of the release and the matters to which it was intended to apply may be established by parol evidence").  This is precisely what occurred here.

(1st Dep't 2003); *Gonzalez*, 107 A.D.3d at 544.  Accordingly, this Court should

reverse the district court's decision dismissing Plaintiff's cause of action for

fraudulent inducement.

## POINT III

### THE DISTRICT COURT WRONGLY INTERPRETED THE SETTLEMENT AGREEMENT IN DEFENDANT'S FAVOR

**A.    The Applicable Standard For Contract Interpretation**

When ruling on a motion to dismiss in an action that involves the

interpretation of a contract, the court must resolve all ambiguities in the contract in

favor of the plaintiff.  *Malmsteen v. Universal Music Grp., Inc.*, 2012 WL

2159281, at *6 (S.D.N.Y. June 14, 2012) ("At the motion to dismiss stage, a court

may resolve issues of contract interpretation when the contract is properly before

the Court, but must resolve all ambiguities in the contract in plaintiffs' favor.");

*Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 328–29 (S.D.N.Y. 2010).

Moreover, a contract "that reasonably lends itself to two conflicting interpretations

is subject to the rule invoking strict construction of the contract in the light most

favorable to the nondrafting party." *Natt v. White Sands Condo.*, 95 A.D.3d 848,

849 (2d Dep't 2012).   Here, Plaintiff is the nondrafting party.  (Complaint ¶ 47)

(A16).

**B.**     **The District Court Wrongly Resolved Ambiguities In Defendant's Favor And Held That The Settlement Agreement Is Unambiguous**

"An ambiguity exists where [a]. . . contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement . . ." *Morgan Stanley Group Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (internal quotation marks omitted);  *Natt*, 95 A.D.3d at 849 (Contract language is ambiguous when it is "reasonably susceptible of more than one interpretation . . . and there is nothing to indicate which meaning is intended, or where there is contradictory or necessarily inconsistent language in different portions of the instrument."); *Telerep, LLC v. U.S. Int'l Media, LLC,* 74 A.D. 3d 401, 402 (1st Dep't 2010) ("[a] contract is ambiguous if on its face [it] is reasonably susceptible of more than one interpretation").

**1.**     **The District Court Failed To Determine Whether The Settlement Agreement is Ambiguous *With Respect To The Issues In Dispute***

Here, relying on the general principles that a contract is unambiguous when "there is no reasonable basis for a difference of opinion" and ambiguity "is determined by looking within the four corners of the document, not to outside sources," the district court held that the Settlement Agreement is unambiguous. (A35-A36.)

35

However, "[u]nder New York law, the key inquiry at the initial stage of interpreting a contract is whether it is ambiguous *with respect to the issue disputed by the parties*." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 914 (2d Cir. 2010) (emphasis added) (citing *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010).

Here, Plaintiff's allegation that the Settlement Agreement's definition of "the Product" was not meant to include any products other than Batch 372 which: (1) was the only Batch subject to a recall by the KFDA, and (2) was the only product about which "consumers have filed various complaints in respect of the Product, due to which Plaintiff "has provided compensation to [a] third party distributor" in the amount of $900,000 is entirely reasonable and, in fact, supported by the terms of the Settlement Agreement itself.

WHEREAS clause "C" of the Settlement Agreement explicitly provides that the "Products" at issue are "certain cosmetic products" for which "consumers have filed various complaints in respect of the Product, due to which MF has provided compensation to [a] third party distributor." (A28). Thus, the Settlement Agreement is limited by its terms to products: (1) that were sold, (2) for which

36

consumers filed complaints, and (3) about which Plaintiff compensated a third-party distributor in the amount of $900,000. (Complaint ¶ 24) (A12).[4]

By ignoring the import of the language concerning the definition of "Product," which is described as having been sold in Korea and about which complaints were made and for "which MF has provided compensation to [a] third party distributor" (A28) in the amount of $900,000, the district court ignored the principle that "[t]he meaning and coverage of a general release depends on the controversy being settled and upon the purpose for which the release was actually given . . . A release may not be read to cover matters which the parties did not desire or intend to dispose of." *Ofman v Campos,* 12 A.D.3d 581, 581 (2d Dep't 2004) ("Issues of fact exist as to which disputes the parties intended to settle when they entered into the stipulation. Consequently, the appellant failed to submit evidence to establish his entitlement to dismissal of the complaint in action No. 2 as a matter of law") (quoting *Lefrak SBN Assoc. v Kennedy Galleries,* 203 A.D.2d 256, 557 (2d Dep't 1994) ("Contrary to the defendant's contentions, the record supports the conclusion that the general release relied upon as a complete defense

---

[4] The fact that the Settlement Agreement provides that the Product had been sold in Korea, that complaints were made about the Product and that Plaintiff had paid compensation (in the amount of $900,000) to a distributor (A28), demonstrates that the parties only contemplated settling claims relating to specific products, *i.e.*, Batch 372, and the district court's holding that "Paragraphs B and C of the Recitals do not limit the definition of Product to Batch 372, but only state that the Product had been sold in Korea and complaints were made about the Product" merely interprets the agreement in Defendant's favor.

to the action was not intended to cover the claim raised by the plaintiff herein")
(internal citations omitted) (citing *Cahill,* 5 N.Y.2d at 299) ("When the releases
were executed, it is clear, the parties were solely concerned with settling the
controversy then being litigated . . . In the light of such facts, the Appellate
Division was fully justified in concluding that Roberts' release covered and barred
only those matters about which there had been some dispute") (internal citations
omitted) (citing *Simon*, 274 A.D. at 451)).[5]

### 2.    The District Court Actually Acknowledges That The Settlement Agreement Is Ambiguous

In addition, the district court's holding that "Plaintiff's interpretation of the
Settlement Agreement requires parol evidence to read the terms of the Settlement
Agreement, because it requires evidence that only Batch 372 had been bought and
sold prior to signing the agreement" (A36) is actually a telling acknowledgement
that an ambiguity exits concerning the meaning of the terms "Product"  and

---

[5] *See also Clinton Street Food Corp.,* 254 B.R. 523, 534-535 (Bankr. S.D.N.Y.
2000) (denying motion to dismiss based on the defense of release that was
"[c]oncededly ... quite broad," because "The pending claims were unknown to the
trustee and hence not the subject of a dispute at the time, making it less likely they
are covered by the release. In addition, it does not appear that the parties bargained
over the auction claims, or that the estate received any additional consideration for
releasing such potentially valuable claims."); *Lucent Technologies, Inc. v.
Gateway, Inc.,* 470 F. Supp. 2d 1195, 1202 (S.D. Cal. 2007) (applying New York
law on a motion for summary judgment to dismiss an affirmative defense of
release that covered "any and all claims ... demands... liabilities ... rights of action
and causes of action, of any kind or character whatsoever," because the remaining
portions of the agreement established an unambiguous context).

"compensation to [a] third party distributor" in connection with complaints that were made. (A28.)  Contrary to the district court's conclusion, here, extrinsic evidence would not create an ambiguity but, rather, would clarify the ambiguity about which products were covered by the Settlement Agreement.

### 3. The Settlement Agreement Itself Explicitly Recognizes The Existence Of "Products" That Are Outside The Scope Of The Release Of The Products

The terms Settlement Agreement itself demonstrate that the release was not intended to cover every product that Plaintiff did (or might in the future) purchase from Defendant.  Section 2(d) of the Settlement Agreement explicitly references (1) "the purchase of further products" (Settlement Agreement, Section 2(c)) (A28), (2) "the purchase of MBSC products other than the Product."  (Settlement Agreement, Section 2(d)) (*id.*), and (3) "the distribution of sale of any other [of Defendant's] product." (Settlement Agreement, Section 4) (A29).   As such, Plaintiff's allegation that the Settlement Agreement's definition of "the Product" was not meant to include any products other than Batch 372 at the time the Settlement Agreement was executed is supported by the explicit terms of the Settlement Agreement itself and is entirely reasonable. The reference in the Settlement Agreement to other products that are outside the scope of the release at the very least create an ambiguity at this stage of this action.

39

4.   **The District Court's Interpretation Of The Settlement Agreement Would Render The Provisions Concerning Plaintiff's Payment Of Compensation To A Third Party Distributor Superfluous**

The district court's interpretation of the Settlement Agreement also fails to give any import to the language in the Settlement Agreement concerning "consumers [who] filed various complaints in respect of the Product, due to which MF has provided compensation to [a] third party distributor" in the amount of $900,000 (A12, A28-A29).  However, such an interpretation would render this provision superfluous, a view unsupportable under standard principles of contract interpretation.[6]  Moreover, by ignoring the references to Plaintiff's payment to a third-party distributor (in the amount of $900,000) "Product" which is ambiguously defined in the Settlement Agreement, would cover every product that Plaintiff ever purchased from Defendant at any time and forever, whether or not Plaintiff had received any complaints or paid any compensation to any party.  This

---

[6] *See Int'l Multifoods Corp. v. Commercial Union,* 309 F.3d 76, 86 (2d Cir. 2002) ("We disfavor contract interpretations that render provisions of a contract superfluous."); *Scholastic, Inc. v. Harris,* 259 F.3d 73, 83 (2d Cir. 2001) (quoting *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094-95 (2d Cir. 1993) ("In determining whether a contract is ambiguous, a court must look at 'the entire integrated agreement,' to 'safeguard against adopting an interpretation that would render any individual provision superfluous.'"); *Galli v. Metz,* 973 F.2d 145, 149 (2d Cir. 1992) (quoting *Garza v. Marine Transport Lines Inc.,* 861 F.2d 23, 27 (2d Cir. 1988)) ("Under New York law an interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.'"); *Lawyers' Fund for Client Protection of State of N.Y. v. Bank Leumi Trust Co.,* 94 N.Y.2d 398, 404 (2000) (defendant's "interpretation would render the second paragraph superfluous, a view unsupportable under standard principles of contract interpretation.").

is contrary to the descriptions of the product that immediately follow its definition in the WHEREAS clauses in the Settlement agreement. (A28.)

In sum, Plaintiff's interpretation of the Settlement Agreement is entirely reasonable and, at a minimum, an ambiguity exists, which warranted the denial of Defendant's motion to dismiss. *See, e.g., Sweeny v. Richter*, 2013 N.Y. Slip. Op. 3067 (Sup. Ct. N.Y. Co. April 8, 2013) ("in this case, the statements in plaintiff's affidavit and the documentary evidence raise issues of fact as to whether the release was intended to encompass the claims in this action.") (citing *Bloss*, 203 A.D.2d at 37).

Accordingly, this Court should reverse the district court's decision granting Defendant's motion to dismiss.

### 5.    The District Court Improperly Failed To Consider The Context In Which The Settlement Agreement Was Executed

The district court failed to consider the context of the Settlement Agreement in any way.  However, "[a] contract may be ambiguous when applied to one set of facts but not another." *Eternity Global*, 375 F.3d at 178 ("if a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state a claim.") (quoting *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.,* 345 F.3d 154, 184 (2d Cir. 2003)).  When such an ambiguity exists, a court may consider the factual circumstances surrounding the execution of that contract in order to determine the parties'

41

intentions with respect to that agreement.  *See Utica City Nat'l Bank v. Gunn,* 222 N.Y. 204, 208 (1918) (Cardozo, J.) ("To ascertain the meaning of this contract, we must recall the surrounding circumstances, . . . "). "An ambiguity exists where the . . . contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement . . ." *Morgan Stanley Group Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (internal quotation marks omitted); *see also Kobrand Corp. v. Abadia Retuerta S.A.*, 2012 WL 5851139, at *4 (S.D.N.Y. Nov. 19, 2012) ("A contract is ambiguous when it could suggest multiple meanings to a reasonable, objective reader familiar with the context of the contract."); *Convergent Wealth Advisors LLC v. Lydian Holding Co.*,  2012 WL 2148221, at *4 (S.D.N.Y. June 13, 2012) ("A trial judge must review a contract for ambiguity through the lens of 'what a reasonable person in the position of the parties would have thought the contract meant.'").

Here, based on the allegations in the Complaint concerning the intent of the Settlement Agreement and the context in which it was written, and because the court "must resolve all ambiguities in the contract in plaintiffs' favor" *Malmsteen,* 2012 WL 2159281 at *6, at a minimum, the district court should have considered the context in which the Settlement Agreement was executed, as alleged in the Complaint.  *See Atwater & Co.*, 246 N.Y. 519, 524 (1927) ("In deciding whether

42

an agreement is ambiguous courts "should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby.").  Here, the relevant circumstances that the district court did not give any weight to are the numerous allegations that the Settlement Agreement was only ever intended to provide a release in regard to products for which "consumers have filed various complaints in respect of the Product, due to which MF has provided compensation to [a] third party distributor" in the amount of $900,000. (A12, A28-29).

In sum, given these allegations, an ambiguity plainly exists warranting the denial of Defendant's motion to dismiss. *See, e.g., Alston v. 1749-1753 First Ave. Garage Corp.*, 2013 WL 3340484, at *5 (E.D.N.Y.  July 2, 2013) ("While contract ambiguities can be resolved either at trial or on summary judgment since extrinsic evidence can be offered to resolve the ambiguity, it is not proper to do so on a motion to dismiss."); *Bank of N.Y. Trust, N.A. v. Franklin Advisors, Inc.*, 522 F. Supp. 2d 632, 637 (S.D.N.Y. 2007) ("The Court's role on a 12(b)(6) motion to dismiss is not to resolve contract ambiguities.").

Accordingly, this Court should reverse the district court's decision granting Defendant's motion to dismiss.

### 6.     Given Plaintiff's Allegations Of Fraud, The District Court Erred By Refusing To Consider The Availability Of Parol Evidence

The parol evidence rule only applies to an integrated agreement executed in the absence of fraud.  *See Polygram Holding, Inc. v. Cafaro*, 42 A.D.3d 339, 340 (1st Dep't 2007) (parol evidence rule applies only absent fraud or mutual mistake). Under this fraud exception, "the parol evidence rule is not used to contradict or vary the contract, but to prove that the contractual obligation is, in fact, no obligation at all.  Thus, . . . fraud . . . may be established by parol evidence to destroy the validity of an agreement." *In re Uni-Rty Corp.,* 191 B.R. 595, 597 (S.D.N.Y. Bankr. 1996) (citing *Thomas v. Scutt*, 127 N.Y. 133, 137 (1891); *W.L. Christopher, Inc. v. Seamen's Bank for Sav.*, 144 A.D.2d 809, 811 (3d Dep't 1988).

Here, in light of Plaintiff's detailed allegations of Defendant's fraud in connection with the Settlement Agreement, Plaintiff should be permitted to introduce parol evidence with respect to the scope of the release contained in the Settlement Agreement, and the district court's rejection of the availability of parol evidence was improper.

Accordingly, this Court should reverse the district court's decision granting Defendant's motion to dismiss.

44

## POINT IV

## THE DISTRICT COURT'S DISMISSAL OF PLAINTIFF'S RESCISSION CLAIM WAS IMPROPER

The district court dismissed Plaintiff's Sixth Cause of Action for rescission, stating that "[w]here a settlement agreement releases claims for fraud, a plaintiff cannot seek to rescind the settlement agreement based on claims for fraud, unless those claims are collateral to the contract." (A39) (citing *Bellefonte*, 757 F.2d at 527). The district court's decision is incorrect for four reasons.

As an initial matter "[t]he elements of a claim for rescission based on fraud are misrepresentation, concealment or nondisclosure of a material fact; an intent to deceive; and an injury resulting from justifiable reliance by the aggrieved party." *Allen,* 945 F.2d at 44. Plaintiff plainly pleads those elements, and, for that reason alone, the district court's dismissal of the Complaint should be reversed. *Id.* ("Construing the factual allegations in the complaint in appellants' favor, we conclude that they state a claim for rescission under New York law sufficient to withstand a challenge under Rule 12(b)(6)").

Second, as explained in Sections I.B. and C., *supra,* the Settlement Agreement does not even purport to release fraud claims relating to the Settlement Agreement itself, and Plaintiff's fraud claims are collateral to the claims that were released in the Settlement Agreement.

45

Third, "[w]here a complaint alleges fraud or duress in the procurement of a release either by way of an equitable action to rescind or by way of an action at law for damages sustained as a result of the release, a motion to dismiss which is based solely on the release should be denied." *Anger*, 80 A.D.2d at 736.[7]

Finally, the right of a party to an agreement to rescind it because of a mistake induced by misrepresentation by the other party is well settled. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 585 (2d Cir. 2005) (stating that New York law permits rescission based on unilateral mistake if that mistake "is accompanied by some fraud committed by the other contracting party"); *Middle East Banking Co. v. State St. Bank Int'l,* 821 F.2d 897, 906 (2d Cir. 1987) (recognizing that New York courts will, in some cases, rescind contracts for a unilateral mistake 'which is known or ought to have been known to the other party.'") (citation omitted) (quoting *Assurance Co. v. Pulin,* 142 N.Y.S.2d 809,

---

[7] In addition to *Bellefonte*, the district court relies on *Consorcio Prodipe, S.A. de. C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178 (S.D.N.Y. 2008) to support its holding that Plaintiff cannot seek rescission of the Settlement Agreement based on fraud unless those claims are collateral to the contract." (A39.) However, *Consorcio* was decided on a motion for summary judgment with a fully developed record and not a motion to dismiss. Moreover, in *Consorcio* plaintiffs alleged fraud based upon defendants' failure to provide full disclosure in connection with the parties' settlement agreement. *Id.* Here, Defendant made affirmative misrepresentations in connection with the Settlement Agreement, including providing fraudulent samples for Plaintiff to provide to the KFDA. Additionally, like the court in *Centro*, the *Consorcio* court was presented with a broad general release that specifically released all claims related to the agreements at issue, unlike the limited release at issue here. *Id.* at 184.

46

810 (1st Dep't 1955) (per curiam)); *Sheridan Drive-In, Inc. v. State,* 228 N.Y.S.2d 576, 582 (4th Dep't 1962) ("The right of a party to an agreement to rescind it because of mutual mistake or because of mistake on his part induced by misrepresentation by the other party is well settled.") (citations omitted).

Accordingly, this Court should reverse the district's decision dismissing Plaintiff's cause of action for rescission.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully requests that this Court reverse the June 6, 2014, Opinion and Order of Judge Lorna G. Schofield and remand this action for further proceedings before the district court, together with such other and further relief as this court deems just and proper.

Dated:  August 22, 2014
       New York, New York

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By:    /s/ Daniel L. Brown

       Daniel L. Brown

       30 Rockefeller Plaza
       New York, New York  10112
       Telephone:   (212) 634-3095
       Facsimile:   (212) 655-1768

*Attorneys for Plaintiff-Appellant Morefun Co. Ltd.*

## <u>CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)</u>

1.  This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B). It contains 10,988 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6). It has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 pt. Times New Roman font.

Dated:  August 22, 2014